**MOHAWK MOTOR, INC., Plaintiff,**
and
**International Cartage, Inc., Intervening Plaintiff,**
v.
**UNITED STATES of America and Interstate Commerce Commission, Defendants,**
and
**Associated Truck Lines, Inc., et al., Intervening Defendants.**

Civ. A. No. 4-72092.

United States District Court,
E. D. Michigan, S. D.

Aug. 21, 1975.

Eugene C. Ewald, John W. Ester, Matheson, Bieneman, Veale & Parr, Bloomfield Hills, Mich., Martin J. Leavitt, Sullivan & Leavitt, P. C., Northville, Mich., John W. Bryant, Rex Eames, Eames, Petrillo & Wilcox, Detroit, Mich., for plaintiff.

James Proctor, ICC, John H. D. Wigger, Dept. of Justice, Washington, D. C., Gwenn L. Carr, Asst. U. S. Atty., Detroit, Mich., for defendants.

## MEMORANDUM OPINION

Before McCREE, Circuit Judge, and FREEMAN and FEIKENS, District Judges.

FEIKENS, District Judge.

Plaintiff, Mohawk Motor, Inc. (Mohawk), seeks to enjoin and set aside

certain orders of the Interstate Commerce Commission (Commission). By reason of the requirement of 28 U.S.C. § 2284, a three-judge district court was convened. International Cartage, Inc. (ICI) is an intervening plaintiff and Associated Truck Lines, Inc., Jones Transfer Company and White Star Trucking, Inc. are common motor carriers and intervening defendants. Central Transport, Inc., a common motor carrier of general commodities (Central), now owns Mohawk.

Central, in 1968, operated exclusively within the state of Michigan. At that time, Central sought authority from the Commission to acquire control of Mohawk through purchase of its capital stock. It ultimately contemplated merger. Mohawk, also a motor common carrier, possessed the authority to operate in Michigan, Indiana and Ohio. Mohawk's routes extend from Detroit, Michigan on the north, Cleveland, Ohio on the east, Cincinnati, Ohio on the south and Fort Wayne, Indiana on the west.

In June of 1968, while the Central-Mohawk application was pending before the Commission, Central filed an application with the Commission for authority to temporarily lease and to permanently acquire a portion of the operating rights of Norwalk Truck Lines, Inc. (Norwalk) of Littleton, Colorado. These rights involve routes extending from Pontiac, Michigan on the north, Akron, Ohio on the east, Mansfield, Ohio on the south and Fort Wayne, Indiana on the west. They duplicate in substantial measure the portions of the Mohawk authority involved in the proposed sale to ICI. In July of 1969, the Commission granted Central authority to temporarily lease these Norwalk operating rights.

In December of 1969, the Commission approved Central's application to purchase Mohawk's capital stock and to merge Mohawk into Central. Central purchased the stock but postponed merger, with the Commission's consent,

pending clarification of its effect on the operating rights since duplicative rights are lost through merger.

In November of 1970, Michigan Express, Inc. (MX) of Grand Rapids, Michigan, a motor common carrier, filed a petition for reorganization in the United States District Court for the Western District of Michigan. The court appointed Central as receiver, subject to Commission approval, which was obtained. Central then applied to the Commission for authority to purchase MX's capital stock and thus acquire control of its operating rights and property. MX possesses authority to operate in several midwestern states. Its authority includes routes between Detroit, Michigan and Akron, Ohio, serving the intermediate and off-route points of Akron, Toledo and Cleveland, Ohio, among others.

In summary, by the end of 1970 Central possessed the authority to acquire the operating rights of Mohawk. It operated through temporary lease a portion of Norwalk's operating rights and had applications pending before the Commission to permanently acquire the Norwalk rights and to purchase MX's operating rights and property. Thus, Central found itself in the position in which, if all the applications were granted by the Commission, it would have authority to acquire operating rights that, while more extensive, would substantially duplicate Mohawk's operating rights.

On May 6, 1971, Mohawk and ICI filed a joint application with the Commission in which ICI sought authority under 49 U.S.C. § 5 to purchase certain operating rights and property of Mohawk. Mohawk possesses regular route general commodity authority over three routes between Detroit, Michigan and Toledo, Ohio, over two routes between Toledo, Ohio and Fort Wayne, Indiana and over one route between Toledo, Ohio and Cleveland, Ohio. The application proposed the sale by Mohawk to ICI of one route between

Detroit and Toledo, one route between Toledo and Fort Wayne and the one route between Toledo and Cleveland. Mohawk proposed to retain one route between Detroit and Toledo and between Toledo and Fort Wayne and to cancel the third route between Detroit and Toledo. Mohawk was authorized to service all intermediate points along its routes but only certain specified intermediate points were proposed to be transferred to ICI.

Hearings on this application were held before an administrative law judge. There the intervening defendants opposed the application contending its grant would create a new competitive service without any showing of public necessity and convenience.

In his recommendation (Report and Order) the administrative law judge found that a grant of Mohawk's petition would cause an unlawful splitting of Mohawk's operating authority. Commenting on the Detroit-Toledo route and the Toledo-Fort Wayne route which Mohawk proposed to sell while it retained other routes between these points, he concluded:

"The sale of the route to ICI would not interfere with or materially diminish the continuation of the Mohawk operation between the involved points. In turn, ICI would be purchasing nothing more than bare operating rights without the goodwill and traffic that forms the basis of approval of transactions under section 5. It is thus concluded that the described splitting of Mohawk's operating rights would result in two motor carrier services rather than the one now operating between the described points, and that the creation of a new motor carrier service as described would not be consistent with the public interest unless there has been shown a public need therefor." Report and Order at 17.

ICI and Mohawk filed exceptions with the Commission to the recommended Report and Order in which they sought to eliminate the objectionable splitting by making modifications and cancellations in the operating authority to be transferred and retained. The Commission having treated plaintiff's proposed modifications and cancellations as amendments to its basic application, nonetheless held that they failed to cure the objectionable features and plaintiff's application was denied. The Commission also denied a petition for reconsideration of its decision and denied plaintiff's petition to reopen for further hearings. At that point plaintiff filed this suit.

In a lengthy opinion (Report) the Commission adopted the statement of facts in the report of the administrative law judge and addressed three issues: (1) the unlawful splitting of duplicating operating authority through the transaction over the Detroit-Toledo and Toledo-Fort Wayne routes; (2) the creation of a new competitive service; and (3) trafficking in operating authority. As to the issue of trafficking in operating authority, the Commission made a comment in its decision but did not use this as a reason for its decision.

The Commission adopted the administrative law judge's finding that the sale of Mohawk's U.S. 25 route authority between Detroit and Toledo combined with the retention of its U. S. 24 route authority constituted an unlawful splitting of authority. The Commission also concluded that as to the Toledo-Fort Wayne route there would likewise be an unlawful splitting of authority and further that such a split would result in the creation of a new competitive service for which no meaningful public need was demonstrated. This finding by implication also applied to the split of authority in the Detroit-Toledo route. The Commission rejected proposals which plaintiff contends would have eliminated the objectionable features saying that there would in any event be a new competitor in these areas. The Commission found that Central-Norwalk, Mohawk and MX were operated

as one carrier and provided a single competitive service. It found that Central would still be in a position to serve the same territory and the same customers as it presently does pursuant to its operations under the Norwalk temporary authority and that it would not be relinquishing any goodwill or traffic over which it now has control and that it would be providing the same degree of competition to intervening defendants.

■ The function of this court is limited to an inquiry to determine whether there is warrant in the law and in the facts for the Commission's findings and conclusions. *United States v. Pierce Auto Freight Lines, Inc.*, 327 U.S. 515, 536, 66 S.Ct. 687, 90 L.Ed. 821 (1945). The Administrative Procedure Act sets forth the scope of review in 5 U.S.C. § 706:

"The reviewing court shall—

. . . . . .

"(2) hold unlawful and set aside agency action, findings, and conclusions found to be—

"(A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; [or]

. . . . .

"(E) unsupported by substantial evidence . . . ."

■ The focus for review under this substantial evidence test was established in *Universal Camera Corp. v. N. L. R. B.*, 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456 (1951). The reviewing court is directed to examine the whole record. "The substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera*, 340 U.S. at 488, 71 S.Ct. at 464. This does not leave the court free to substitute its own judgment. If there are two conflicting views, either of which could fairly be taken, the reviewing court may not displace the Commission's choice even though the court would

justifiably have made a different choice had it heard the matter de novo.

■ There is substantial evidence in this record to support the Commission's findings and conclusions. Members of the Moroun family who own Central closely direct the affairs of Mohawk and Michigan Express. Central, merged in 1974 with Norwalk, fully utilizes its Norwalk authority. Mohawk and Central have common officers and directors. They have common terminal facilities in Detroit, Toledo and Fort Wayne. They employ common salesmen who work jointly for both carriers and they have a common pickup and delivery service in Detroit and Fort Wayne. They use routing clerks interchangeably. When the evidence is considered totally, it does appear that there is no real distinct competition between the entities owned or controlled by Central.

It is reasonable to conclude that in its acquisitions Central knowingly gathered up these rights with the expectation that as they duplicated Central would either have to operate them as distinct competitive entities or face the risk of the cancellation of duplicating lines. Central chose to do neither. There is ample support in the proceedings to justify the conclusion of the Commission.

Mohawk also contends that the Commission's decision is arbitrary and capricious. These allegations generally assert that the Commission's action is arbitrary because it is not based on a full consideration of the evidence in the record or because the Commission has acted inconsistently.

■ The standard of review here is narrow—a rational connection between the facts found and the choice made based upon a consideration of the relevant factors. *Bowman Transportation, Inc. v. Arkansas-Best Freight System, Inc.*, 419 U.S. 281, 285, 95 S.Ct. 438, 42 L.Ed.2d 447 (1974).

The Commission has clearly done so here. Its decision reflects a consideration of the whole record and is consist-

ent with its past decisions which uniformly hold that the public interest criterion in 49 U.S.C. § 5 precludes the creation of new competitive services in purchase transactions.

Plaintiff's remaining contention that the Commission should rehear the case is without merit.

The relief sought by plaintiff is denied. An appropriate order may be submitted.